UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION NO. 05-1158 |
| VERSUS | JUDGE ROBERT G. JAMES |
| THE UNIVERSITY OF LOUISIANA AT MONROE | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Summary Judgment of Contempt and to Enforce Consent Decree ("Motion for Contempt") [Doc. No. 98] filed by Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant the Board of Supervisors for the University of Louisiana System ("the Board"). The Board has filed a Memorandum in Opposition to the Motion for Contempt. [Doc. No. 106]. The EEOC has filed a Reply Memorandum. [Doc. No. 109].

On February 25, 2016, the Court held an evidentiary hearing and oral argument on the pending motion. The EEOC was represented at the hearing by attorney Gregory Juge who made oral argument. The Board was represented by Winston DeCuir, Jr., who presented testimony by attorneys Linda Law Clark ("Clark") and Wesley Johnson ("Johnson") and made oral argument.

For the following reasons, the Motion for Contempt is GRANTED IN PART and DENIED IN PART.

I.  FACTS AND PROCEDURAL BACKGROUND

On June 29, 2005, the EEOC brought this lawsuit against ULM under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a) &(d), 626(b). The EEOC

alleged that the University of Louisiana at Monroe ("ULM") unlawfully refused to rehire Dr. Van McGraw ("McGraw"), a former professor, in retaliation for his having filed prior age discrimination suits against the university. Alternatively, the EEOC alleged that ULM refused to hire McGraw because of his age. The EEOC sought a judgment permanently enjoining ULM from discriminating against retired employees and from engaging in any other employment practice which discriminates against those who are forty years or older on the basis of age. The EEOC further sought a judgment ordering ULM to institute policies that provide equal employment opportunities for individuals who are 40 years or older. Finally, the EEOC prayed for an award of damages to McGraw in the form of front and back pay, applicable prejudgment interest, liquidated damages (in an amount equal to back pay and prejudgment interest), and placement in a position of his choice.

Pursuant to the March 17, 2006 Report and Recommendation of Magistrate Judge Karen L. Hayes [Doc. No. 12], the EEOC was permitted to file an Amended Complaint [Doc. No. 14] properly naming the Board as the correct defendant in this case because ULM had no capacity to sue or be sued.[1] The Court adopted the Report and Recommendation and dismissed ULM as a Defendant in this matter on May 5, 2006. [Doc. No. 17].

On April 19, 2010, the Court approved and signed a Consent Decree ("Decree") entered into between the EEOC and the Board. [Doc. No. 97]. The Decree referred to ULM and the Board as the collective "Defendant" in this matter. Both entities denied engaging in unlawful employment actions. Nonetheless, in the interest of settlement, the Board agreed to pay McGraw

---

[1] Despite Magistrate Judge Hayes' clear and correct statement of the law that ULM is not a juridical person, the EEOC still named both ULM and the Board as Defendants in its Amended Complaint. [Doc. No. 14, ¶ 4].

$450,000.00. The Decree then details other actions ULM and its College of Business Administration agreed to take.

The Decree does not mention any other college or university governed by the Board by name, but differentiates certain actions that the Board also agreed to take. Namely, in § 10, the Board agreed to issue and disseminate "to all of its universities" (without identifying those universities individually) a new hiring policy concerning retirees and take certain actions related to the issuance and dissemination of the new policy. *Id.* at § 10. Likewise, in § 11, the Board agreed to issue and disseminate a new anti-retaliation policy and to "rescind and remove from all of its written policies any references to punishment or discipline of persons for making false claims of discrimination, and notify all of its universities of such rescission." *Id.* at § 11.

The parties agreed that the Decree would be in effect for five years from the date it was signed by the Court ("the Compliance Period"). *Id.* at § 9. Thus, it was effective April 19, 2010, to April 19, 2015.

The Decree also provided for an "Enforcement Period," which was to be six months from the end of the Compliance Period. During the Enforcement Period, the EEOC had the right to "commence enforcement actions relative to any violation hereof by Defendant." *Id.*[2]

It is undisputed that attorneys for the EEOC and the Board and ULM communicated numerous times during the five-year Compliance Period. It is also undisputed that the EEOC was not satisfied that the Board and ULM had complied with the Decree's requirements by the

---

[2] Arguably, based on the Decree's plain language, any reference to "Defendant" would apply only to the conduct of ULM, not to the actions required of the Board in §§ 10 and 11. If so, there was no extended enforcement period for §§ 10 and 11. However, the Board did not raise this argument, and the instant motion was timely filed, at the least, with regard to the provisions specific to ULM and its College of Business.

designated deadlines. However, the EEOC did not file the instant motion until the last day of the Enforcement Period, October 19, 2015.

In its motion, the EEOC moves the Court for monetary sanctions against the Board, a five-year extension of the Compliance and Enforcement Periods, and certain other substantive modifications of the Decree.[3]

At the hearing, both Clark and Johnson testified about their attempts to comply with the requirements of the Decree. Clark intimated that nothing provided by the Board and ULM was sufficient to meet the EEOC's demands. However, when Johnson became involved in the case in 2014, she was ultimately able to obtain forms and information from the EEOC and reach compliance with regard to the provisions specific to ULM. The Board is also now fully in compliance with the requirements of §§ 10 and 11.

## II. APPLICABLE LAW

### A. Consent Decrees

Consent decrees are both contracts and legal instruments. *United States v. Alcoa, Inc.*, 533 F.3d 278, 283 (5th Cir. 2008). Therefore,

> Courts should not impose their own terms within a consent decree and should read consent decree terms by their plain meaning. . . At the same time, consent decrees are more than contracts. They are also enforceable judicial orders.

*Id.* at 286 (citations omitted). "[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree. . . [and] have wide discretion to enforce decrees and to implement remedies for decree violations." *Id.*

---

[3] Among other relief requested, the EEOC moves the Court to modify the Decree to require the Board to retain both a third party administrator and a full-time EEO coordinator/officer.

4

B. **Contempt**

A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). Contempt is committed only if a person violated a court order requiring in specific and definite language that a person do or refrain from doing an act. *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992).

The Fifth Circuit has explained the difference between civil and criminal contempt[4] and the effect on a party's due process rights as follows:

> [T]he initial touchstone for determining the due process rights of a sanctions defendant lies in the characterization of the particular contempt as either "civil" or "criminal":
>
> Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required. To the extent that such contempts take on a punitive character, however, and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order.
>
> *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *see also Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (in a contempt action, as in any other, "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings").

---

[4] In this case, the EEOC's Motion for Contempt addresses claims of indirect contempt that occurred outside the Court's presence. Direct contempt that occurs in the court's presence may be immediately adjudged and sanctioned summarily, *see, e.g., Ex parte Terry*, 128 U.S. 289(1888), and, except for serious criminal contempt in which a jury trial is required, *Bloom v. Illinois*, 391 U.S. 194, 209-210 (1968), the traditional distinction between civil and criminal contempt proceedings does not apply. *Cf. United States v. Wilson*, 421 U.S. 309, 316 (1975).

*Crowe v. Smith*, 151 F.3d 217, 226-227 (5th Cir. 1998).

"A contempt fine . . . is civil and remedial if it 'either coerce[s] the defendant into compliance with the court's order, [or] . . . **compensate[s] the complainant for losses sustained**.' Where the fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id.* at 227 (quoting *Bagwell*, 512 U.S. at 829, 114 S.Ct. 2552) (emphasis added) (other citations omitted). The Fifth Circuit explained that a flat fine cannot be civil because it cannot be avoided by the contemnor, and a fine payable to the Court cannot be civil because it is not compensatory.

Specifically in the enforcement of decrees, the Fifth Circuit has instructed:

Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees. The theory for allowing attorneys' fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.

*Cook v. Oschner Foundation Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (citing *United Mine Workers*, 330 U.S. at 303-304).[5]

Contempt is deemed criminal if it does not meet the requirements outlined for civil contempt above. The "procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases." *Young v. United States ex rel. Vuitton Et Fils, S.A.*, 481 U.S. 787, 808 (1987) (citation and internal quotation marks omitted). These procedures include the appointment of a neutral or disinterested attorney to prosecute the case. *Id.* Additionally, a

---

[5]However, the fact that decrees can be enforced as civil contempt does not allow the court to disregard the differences between criminal and civil contempt or the differing protections which may attach.

contemnor is entitled to other rights, such as the presumption of innocence, the beyond-a-reasonable-doubt burden of proof, right against self-incrimination, notice of the charges, a reasonable opportunity to respond to the charges, the assistance of counsel, and the right to call witnesses. *Id.* at 798-99. The contemnor is entitled to a public trial before an unbiased judge and to a jury trial for serious contempts, such as those resulting in the imposition of a jail term of six months or longer.[6] *Id.* at 808 n.20 (citing *Bloom v. Illinois*, 391 U.S. 194 (1968)). A lesser degree of procedural protection is afforded in two instances: where the contempt is "direct," taking place "in the presence of the court," and where the court imposes "petty" fines. *Bagwell*, 512 U.S. at 832, 837 n. 5, & 838-39. A "petty" fine has not been precisely defined, but the Fifth Circuit has "note[d] . . . that the *Bagwell* Court strongly suggested, without deciding, that $5,000 was an appropriate limit for individuals." *Crowe*, 151 F.3d at 229 n. 13.

### III. ANALYSIS

The EEOC contends that the Board violated the Decree "in at least 20 respects ('violations'), continuously over a period of almost four years" and that it "systematically failed in most respects to comply with the Decree until after December 31, 2013." [Doc. No. 98-1, p. 3]. Specifically, the EEOC contends that the Board committed the following violations of the Decree:

---

[6] The Supreme Court in *Bagwell* further explained that that "[c]ontempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding, and criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power." 512 U.S. at 833-34. Although this is not a "complex injunction" at issue in this case, it does seem to involve complex factual interpretations of the Decree.

(1) Ten (10) violations of § 10 by failing by June 18, 2010, to "issue and disseminate to all of its universities, a policy stating that all universities must consider applicants for employment without regard to retirement status and without regard to an applicant's having previously accused the Board or any of its universities of unlawful discrimination";

(2) Violation of § 11, subsection a, by failing by June 18, 2010, to "issue, and disseminate to all of its universities, a separate detailed written policy concerning unlawful retaliation based on activity protected by the ADEA or other any [sic] of the laws enforced by the EEOC";

(3) Violation of § 11, subsection a, by failing by July 18, 2010, to certify that it had issued the retaliation policy;

(4) Violation of § 11, subsection b, by failing by May 19, 2010, to "rescind and remove from all of its written policies any references to punishment or discipline of persons for making false claims of discrimination" and to notify the universities of this rescission;

(5) Violation of § 11, subsection b, by failing by June 18, 2010, to certify to the EEOC that the rescission of the policy regarding threats for false complaints was made and the universities were notified, along with providing a copy of the notifying document;

(6) Seven (7) violations of § 7 by ULM's failing to submit compliance reports every six months, for a total of seven violations; and

(7) Violations of § 8, subsections a and b, by ULM's failing to timely complete two hours of annual training on the ADEA and to certify within thirty days of each session that the training had taken place for the years 2010, 2011, 2012, and 2013.

[Doc. No. 98, pp. 11-15[7] (quoting and citing [Doc. No. 97, §§ 7, 8, 10 & 11])].

After hearing testimony from Clark and Johnson, as well as reviewing the record in this matter and hearing the argument of counsel, the Court finds that the Board (and, through it, ULM) did not fully comply with all provisions of the Decree by the deadlines set forth in the

---

[7]The Court uses the page numbering of the CM/ECF system, not the page numbering identified by the EEOC.

Decree. The Court further finds that the Decree, on its face, provides that the Board will take the actions set forth in §§ 10 and 11 with regard to "all of its universities," not just ULM.[8] [Doc. No. 97, §§ 10 & 11]. The Board did not comply with those provisions of the Decree prior to the end of the Compliance Period or prior to the filing of the instant motion within the Enforcement Period.

On the other hand, the Court found Clark and Johnson to be credible and sincere in their testimony. It does not appear that either the Board or ULM flatly refused to comply with Decree, but was unclear on its provisions, had certain budgetary constraints, or believed that certain actions were not required under the Decree. With regard to the reporting requirements, both ULM and its College of Business identified in verified semi-annual reports if there were complaints on retaliation due to ADEA complaints and identified if there were any new hires in the College of Business, but failed to fully report the information in the manner requested by the EEOC. Likewise, ULM presented testimony through Clark that it conducted the annual training as required in 2010, 2011, and 2012 and sent the report showing its compliance, but the EEOC did not receive the list. The Board admits that it did not conduct the 2013 training until January 2014. Clark explained that ULM sought to have the training conducted by the HR Director, Fred Baragona, because of budget concerns, but did not receive a response on this request before the end of the semester. The training was provided in January 2014 and has continued with Johnson since then.

---

[8]The Board points out that the University of New Orleans was not part of the University of Louisiana System at the time the Court entered the Decree. This argument, even if otherwise meritorious, does not address the Board's agreement on behalf of the universities which were already part of the University of Louisiana System.

Likewise, the Board did not create and disseminate all the required policies by the deadlines in the Decree.  The Board issued a new hiring policy, posted that policy on its website, and disseminated the policy to the presidents, vice-presidents and other appropriate personnel at the universities, but the Board believed that the new policy was only a template for the universities.  The Board also amended its anti-retaliation policy, but disputed with the EEOC whether the policy could contain any statement about the discipline of an employee who is **proven** to make a false complaint.

Having found that the Board and ULM did not achieve full compliance with the Decree by the deadlines, the Court must determine the appropriate remedy.  In reaching this decision, in addition to the history already recounted, the Court has considered other facts.  Both during the Compliance Period and since that time, there have been no reported complaints of ADEA discrimination or retaliation.  It is undisputed that the Board and ULM have now fully complied with the requirements of the Decree.  In her testimony, current counsel, Johnson, assured the Court that ULM and the Board will both continue to comply with the Decree's substantive requirements.[9]  Finally, the Court has considered the Board's voluntary decision to authorize the other non-defendant universities to establish independent EEO monitors (some of which were new positions) at a cost to the University of Louisiana system.[10]

Based on all of the circumstances, the Court finds that monetary sanctions are not

---

[9] That is, the Court understood Johnson's testimony to mean that ULM would continue training, for example, but would no longer have to report that training to the EEOC.

[10] This is one of the modifications to the Decree that the EEOC requested.

warranted.[11]  Instead, the Court finds that an extension of the original Compliance Period will address the Board's and ULM's untimely compliance and ensure that the EEOC will not be faced with future violations of the ADEA's anti-discrimination and anti-retaliation provisions. Accordingly, the EEOC's Motion for Contempt is GRANTED IN PART and DENIED IN PART.

IV. **CONCLUSION**

For the foregoing reasons, the EEOC's Motion for Contempt [Doc. No. 98] is GRANTED IN PART and DENIED IN PART.

To the extent that the EEOC moves for a finding that the Board and ULM failed to timely and fully comply with the Decree, the motion is GRANTED.  As a remedy for those failures, the Court hereby EXTENDS the Compliance Period of the Decree until December 31, 2017.  If the EEOC believes at any time during this extended period that the Board or ULM is failing to comply with the Decree, it must file the appropriate motion with the Court within forty-five (45) days of the date of the violation, but, in any event, no later than December 31, 2017.  The Enforcement Period shall expire on December 31, 2017.  To the extent that the Decree currently provides for reporting by ULM's College of Business Administration, reporting shall now be made by the College of Business and Social Sciences for all degree programs.  The Decree is thus MODIFIED in these respects.

To the extent that the EEOC moves for monetary sanctions and any other relief, the

---

[11]Unless the Court awarded petty sanctions, such award might well require greater procedural protections than that afforded at the hearing.

motion is DENIED.

MONROE, LOUISIANA, this 8th day of March, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE